AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)          ☐ Original  ☐ Dup

**FILED**
CLERK, U.S. DISTRICT COURT

6/22/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: *Velena Huerre* DEPUTY

CLERK, U.S. DISTRICT COURT

**6/22/2021**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

|  |  |
|---|---|
| United States of America<br><br>v.<br><br>Kyle Cleveland,<br><br>Defendant(s) | Case No.    2:21-mj-02974 -DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 22, 2021 in the county of Los Angeles in the Central District of California, the

defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and (b)(1)(B)(i) | Possession w/ Intent to Distribute Methamphetamine and Heroin |

This criminal complaint is based on these facts:

 *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Merrilee Goodwin, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        6/22/21                    _____
*Judge's signature*

City and state:   Los Angeles, California          Hon. Charles F. Eick, U.S. Magistrate Judge
*Printed name and title*

AUSA: El-Amamy x0552

**<u>AFFIDAVIT</u>**

I, Merrilee Goodwin, being duly sworn, declare and state as follows:

## I.   <u>INTRODUCTION</u>

1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI").  I have been a Special Agent with the FBI since 1998.  I am currently assigned to a Domestic Terrorism Squad of the Los Angeles Field Office, where I primarily investigate people who commit violent criminal acts in furtherance of their political or social ideology, and investigate threats associated with the nefarious use of chemical, biological, radiological, nuclear, and explosive materials.  In this capacity, I investigate federal crimes pertaining to terrorism and have gained experience in cyber-based matters including those involving dark web markets.  As a result, I am familiar with the methods used by criminals in furtherance of their criminal activities in both the virtual and physical worlds, and I have received both formal and informal training from the FBI and other institutions regarding cyber and computer crime investigations and review of digital devices.  As a Special Agent I completed the FBI Academy in Quantico, Virginia, and received training to include the fundamentals of law, ethics, interviewing, report writing, firearms, surveillance, defensive tactics, and case management.  I have also received training regarding the methods of operations of individuals who distribute drugs.

1

## II. <u>PURPOSE OF AFFIDAVIT</u>

2.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, Kyle CLEVELAND ("CLEVELAND") for violations of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii): Possession with Intent to Distribute Methamphetamine; and Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(i): Possession with Intent to Distribute Heroin (the "Subject Offenses").

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only and all dates are approximate.

## III. <u>STATEMENT OF PROBABLE CAUSE</u>

4.    Based on my knowledge of this investigation and my communications with other federal and local law enforcement officers, I am aware of the following:

a.    The San Fernando Valley Peckerwoods ("SFVPs") are a White Supremacist Extremist group based in Los Angeles County. SFVPs' members have engaged in racially motivated violence as well as criminal activity such as drug and illegal firearms trafficking.

2

b.    The Peckerwoods originated in the California State prison system.  Peckerwood groups are spread throughout the state of California.

c.    Peckerwoods are often required by their peers to earn their "bolts," which refers to the lightning bolt tattoo usually found on the inside portion of their left biceps.  To earn this tattoo, a Peckerwood generally must commit a serious assault against a non-white individual.

d.    CLEVELAND is believed to be a SFVP member.  He is believed to be one of the SFVP members who regularly engages in trafficking large quantities of drugs.

5.    Based on my review of a law enforcement report prepared by Los Angeles Police Department ("LAPD") Officer Chavez, I am aware of the following:

a.    On March 22, 2021, at approximately 7:35 p.m., LAPD Officers Chavez and Theule were in a marked police vehicle in the vicinity of Cantlay Street and Oakdale Avenue in Los Angeles, California.  The officers were driving east bound on Cantlay Street from Oakdale Avenue when they observed a gray Dodge Charger with no front license plate, in violation of California Vehicle Code Section 5200(a), exit the cul-de-sac on Hatillo Avenue at Cantlay Street.  The officers recognized the vehicle as one that was parked in front of the driveway of a residence on Hatillo Avenue earlier that day, which was known to the officers to be a "problem location."

b.    The officers saw the Dodge Charger drive westbound on Cantlay Street and pass their vehicle.  The

3

officers began following the Dodge Charger in order to determine whether there were any outstanding arrest warrants associated with the license plate. When the officers pulled behind the vehicle, the driver of the Dodge Charger began to drive erratically at a high rate of speed in a residential neighborhood. The officers followed the Dodge Charger from one to two car lengths behind and saw it fail to stop at a posted stop sign. Due to the driver's erratic driving, the officers did not activate the patrol vehicle's emergency lights and did not attempt to stop the vehicle. The officers saw the Dodge Charger enter the intersection at Saticoy Street and Oakdale Avenue against a red light, where it was hit by a white pickup truck traveling eastbound on Saticoy Street.

c. After being hit by the pickup truck, the Dodge Charger traveled eastbound Saticoy Street from Oakdale Avenue for a short distance and then came to a stop. Officer Chavez observed a black object being thrown out of the passenger window of the Dodge Charger as the vehicle came to a stop. Based on his training and experience, Officer Chavez believed that this action was consistent with an individual discarding firearms and/or narcotics from the vehicle prior to a law enforcement search of the vehicle. Out of concern that the occupant of the vehicle could be armed, Officer Chavez requested that additional law enforcement officers respond to the scene. The individual driving the vehicle was its sole occupant and was later identified as CLEVLAND.

      d.   Officer Theule recovered the black object that CLEVLAND had thrown from the Dodge Charger, which was a black cloth zipper case appearing to contain large quantities of various drugs, a glass pipe with a bulbous end containing a burnt crystalline residue resembling methamphetamine, and a scale.  Also among the items in the black cloth zipper case was a clear plastic zip bag containing blue pills imprinted with "Y20."  Law enforcement officers conducted a search of the Dodge Charger and located three cellular telephones, two of which were in the driver's area of the vehicle.  Officer Theule also located a clear plastic zip lock baggie from the center console area of the vehicle containing a white crystalline substance resembling methamphetamine.  The clear zip lock baggie was the same type of clear zip lock baggie that was found inside the black cloth zipper case that CLEVLAND threw out of the vehicle as it came to a stop.  Officer Theule also recovered $4,395 in cash from CLEVLAND's right rear pants pocket.

      e.   Officer Theule advised CLEVLAND of his <u>Miranda</u> rights.  CLEVELAND stated the Dodge Charger was his and claimed ownership of all the items inside the vehicle.  CLEVELAND refused to answer questions regarding the black cloth zipper case and its contents.

    6.   After the date of this incident, law enforcement officers assisting with this investigation took custody of the drugs that had been seized from CLEVELAND and transferred them to the Drug Enforcement Administration Southwest Laboratory for analysis.  The laboratory determined that the amount of drugs

recovered from the Dodge Charger and vicinity on March 22, 2021 was approximately 397.3 grams of methamphetamine that was 100% pure, 247 grams of a mixture or substance containing a detectable amount of heroin, and 12 grams of a mixture or substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl").  Based on my training and experience, I am aware that these quantities of methamphetamine and heroin are not quantities that can be personally used by any one individual.  Based on the drug quantities, the assortment of drugs, the money, and the scale, there is probable cause to believe CLEVELAND possessed the methamphetamine and heroin with the intent to distribute the drugs to customers in and around the San Fernando Valley.

7.   On April 7, 2021, the Honorable Alicia G. Rosenberg, United States Magistrate Judge, issued a warrant in Case Number 21-MJ-01673 (C.D. Cal.) authorizing the search of facebook.com/profile.php?id=100000085788721, which is a Facebook account belonging to CLEVELAND, for evidence, contraband, fruits, or instrumentalities of criminal violations of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances); and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances). Based on my review of the contents of CLEVELAND's Facebook account, I am aware that CLEVELAND made the following statements about his March 22, 2021 arrest:

a.   On March 24, 2021, CLEVELAND told Facebook user R.C. that he "just got out [of jail,]" and that he had been in a "[h]igh speed chase," and "broke [his] hand."

b.   On March 24, 2021, CLEVELAND told Facebook user K.S. that he "[j]ust got out [of jail] again [y]esterday," and that he was in a "[h]igh speed chase," and "[g]ot hit." CLEVELAND told K.S. that he was alone in his vehicle.

c.   On March 24, 2021, CLEVELAND told Facebook user A.R. that he was "fucked up," and that his "[c]ar [was] totaled."  CLEVELAND told Facebook user A.R. that he was facing "[c]ase number 3."

d.   On March 24, 2021, CLEVELAND told Facebook user J.D. that CLEVELAND did not have a telephone right now because he had been involved in a "high speed chase."

e.   On March 24, 2021, CLEVELAND and Facebook user P.R. discussed CLEVELAND's arrest, and P.R. asked if CLEVELAND still had "those blue things I left with you."  CLEVELAND responded, "[n]ope."  Later in the conversation, CLEVELAND told P.R.: "Need to go see if I can get my shit out of the car," and stated that the car was at "Howard somers."

f.   On March 25, 2021, CLEVELAND told Facebook user R.H. that he was in a "high speed chase," and "lost it all," and was "fucking heated."

//

//

//

//

7

## IV. <u>CONCLUSION</u>

8.    For the reasons described above, I respectfully submit

there is probable cause to issue the requested criminal

complaint and arrest warrant.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>22nd</u> day of
June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE